1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

8

EASTERN DISTRICT OF CALIFORNIA

9

10  CARLOS EMMANUEL MORENO ORTEGA,            Case No. 1:22-cv-01581-ADA-EPG

11              Plaintiff,

12       v.                                   FINDINGS AND RECOMMENDATIONS
                                              TO GRANT, IN PART, DEFENDANT'S
                                              MOTION TO DISMISS
13  NISSAN NORTH AMERICAN, INC.,
                                              (ECF No. 12)
14              Defendant.

15                                            OBJECTIONS, IF ANY, DUE WITHIN
                                              FOURTEEN DAYS
16

17

18          Plaintiff Carlos Emmanuel Moreno Ortega sues Defendant Nissan North American,

19  Inc., alleging that Defendant fraudulently induced him to buy a vehicle containing various

20  defects and thereafter failed to comply with its warranty obligations. (ECF No. 10). Defendant

21  moves to dismiss the case for failure to state a claim upon which relief may be granted, arguing

22  that Plaintiff fails to adequately allege a defect for his warranty claims and fails to adequately

23  allege the Defendant knew of any defect in his vehicle prior to the sale to establish fraud. (ECF

24  No. 12). The presiding District Judge has referred the motion for the preparation of findings

25  and recommendations, and this Court heard oral argument on April 6, 2023. (ECF Nos. 15, 23).

26          For the reasons given below, the Court will recommend that Defendant's motion to

27  dismiss be granted to the extent that it requests dismissal of Plaintiff's fraud claim but

28  otherwise be denied.

1

I.      **BACKGROUND**

    A.  **Summary of the Complaint**

Plaintiff filed this lawsuit on December 9, 2022. (ECF No. 1). After Defendant moved to dismiss the complaint, Plaintiff filed an amended complaint adding factual allegations. (ECF Nos. 6, 10). As amended, the complaint alleges that Plaintiff bought a 2022 Nissan Sentra in February 2022 from a dealer in Selma, California. The vehicle came with various warranties, including a 3 year/36,000 miles express bumper-to-bumper warranty. However, the vehicle had defects leading Plaintiff to take it to be repaird under warranty:

 On June 3, 2022, Plaintiff took the vehicle for repairs for "intermittent issues with starting and turning off," "the audio unit blacking out," and the collision warning system malfunctioning and activating the forward emergency braking (FEB)[1] system "despite there being no obstructions in its vicinity."

On August 29, 2022, Plaintiff took the vehicle for repairs for "issues related to the . . . electrical system," specifically, the audio unit blacking out. Plaintiff also reported that the sunroof button had detached.

On August 31, 2022, Plaintiff took the vehicle for repairs for issues related to the electrical system. Plaintiff was experiencing starting issues with his keys and also reported that the sunroof button had detached.

On October 10, 2022, Plaintiff took the vehicle for repairs for issues related to the electrical system. Plaintiff was experiencing starting issues with his keys.

On December 2, 2022, Plaintiff took the vehicle for repairs for "ongoing issues" related to the electrical system. Specifically, since November 28, 2022, the "electrical component continuously malfunctioned which caused the Subject Vehicle's high beams to not engage." "Thereafter, Defendant's authorized technician refused to conduct any inspections or repairs on the Subject Vehicle since the Subject Vehicle's Drive Assist Display did not illuminate any malfunction light."

---

[1] The FEB system is alternatively referred to in the complaint as the automatic emergency braking (AEB) system. The Court will use only the term "FEB system" for consistency.

Despite these repair attempts, none of the defects were remedied. And Plaintiff's driving concerns with the FEB system "persist at a frequent level," causing the vehicle to "falsely detect collisions" multiple days a week, "while also illuminating the dashboard with a brake light icon."

Plaintiff blames at least some of the problems with the FEB system on a "defective Continental ARS410 radar sensor." He asserts that Defendant "had a duty to disclose the defective and unrepairable FEB system but chose to intentionally conceal and omit this information in order to fraudulently induce Plaintiff's purchase of the" vehicle.

As for Defendant's knowledge of the defective FEB system, Plaintiff states that Defendant offered this system on various Nissan models beginning in 2017. The system uses "a radar and/or camera that measures the distances between the vehicle and its surrounding objects," with the system causing the vehicle to automatically brake if it "detects a rapid decrease in distance between the vehicle and an object accompanied with no driver responsive inputs." Defendant "knew about the problem of false activations in its FEB systems years before it put the first vehicle on the market." Among other things, Plaintiff points to owner manuals of vehicles mentioning the risk of unexpected braking, customer complaints, and technical service bulletins (TSBs) as evidence that Defendant knew about defects with the FEB system before Plaintiff bought his vehicle.

Plaintiff brings three claims under California's Song-Beverly Act based on Defendant's failure to comply with its warranting obligations concerning the vehicle's defects: (1) breach of express warranty; (2) breach of implied warranty; and (3) violation of § 1793.2(b), which requires repairs to "be commenced within a reasonable time" and goods to "be serviced or repaired so as to conform to the applicable warranties within 30 days." Plaintiff's fourth claim alleges fraudulent inducement based on Defendant's failure to disclose the defective FEB system before he bought his vehicle.

Among other relief, Defendant seeks monetary damages, punitive damages, recission of his purchase contract, and attorney fees.

\\\

1      **B.  Overview of Parties' Briefs**

2           Defendant filed its motion to dismiss on February 1, 2023. (ECF No. 12). It argues that,

3      for the Song-Beverly claims, Plaintiff has failed to adequately plead a defect to give it fair

4      notice of his claims. Specifically, Plaintiff "never identifies what parts of the system are

5      allegedly defective, what might be wrong with them, or how those facts might explain the

6      reported symptoms he experienced." As for the fraud claim, Defendant argues that Plaintiff

7      fails to allege facts showing that Nissan knew of any defect in his vehicle prior to the sale.

8           Plaintiff filed an opposition on February 15, 2023, arguing that he adequately pled a

9      defect for his Song-Beverly claims, because his amended complaint "not only identifies the

10     requisite defective systems and corresponding subcomponents (the defective Forward

11     Emergency Braking system and its defective Continental ARS410 radar sensor subcomponent),

12     but [the amended complaint] also provides a comprehensive history identifying repeated repair

13     presentations (more than one) of this specific nonconformity, among others." (ECF No. 16, p.

14     6). As for his fraud claim, Plaintiff mainly relies on the TSBs as establishing Defendant's

15     knowledge of defects in his vehicle prior to the sale.

16          Defendant filed a reply on February 27, 2023, arguing that Plaintiff's allegations of

17     "defects" is just "a description of symptoms," which are insufficient to state a claim. (ECF No.

18     18, p. 9). And Defendant argues that its alleged presale knowledge from TSBs relates to

19     vehicles other than Plaintiff's Sentra, and thus Plaintiff fails to support his fraud claim.

20          At the hearing on April 6, 2023, the Court questioned Plaintiff about the fraud claim,

21     focusing on whether Plaintiff offered sufficient facts in the first amended complaint to show

22     that Defendant had presale knowledge of the alleged FEB defect. (*See* ECF No. 27, pp. 23–31).

23     When asked about whether Plaintiff had additional relevant information that was not included

24     in the first amended complaint, counsel responded that he had TSBs specifically showing

25     Defendant's presale knowledge as to the Nissan Sentra. (*Id.* at 27). The Court asked Plaintiff if

26     he wanted to amend the complaint rather than proceed with the motion to dismiss, and defense

27     counsel had "absolutely no objection" to amendment but requested that Plaintiff either file a

28     second amended complaint or stand by the decision issued on the motion to dismiss the first

                                                    4

1 amended complaint. (*Id.* at 26, 28). The Court gave Plaintiff the opportunity to file an amended

2 complaint, and to notify the Court of Plaintiff's decision later, noting that additional facts could

3 make "a material difference" for "the fraud claim." (*Id.* at 30; *see* ECF No. 23). Moreover, the

4 Court advised Plaintiff of the risk that he would not be granted leave to amend if he proceeded

5 on his first amended complaint. (ECF No. 27, p. 29). Ultimately, Plaintiff filed a notice to

6 submit on the first amended complaint and briefing rather than amend the complaint. (ECF No.

7 25).

8     With briefing and oral argument completed, this matter is now ripe.[2]

9 **II.    STANDARDS FOR MOTION TO DISMISS**

10     Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the

11 pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is

12 and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

13 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Furthermore, Rule 8(a) establishes a

14 pleading standard without regard to whether a claim will succeed on the merits. Indeed it may

15 appear on the face of the pleadings that a recovery is very remote and unlikely but that is not

16 the test." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002) (internal citation and

17 quotation marks omitted).

18     "A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250

19 F.3d 729, 732 (9th Cir. 2001). In considering a motion to dismiss, the Court must accept all

20 allegations of material fact in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93-94

21 (2007). "[T]he court must construe the complaint in the light most favorable to the plaintiff,

22 taking all [of the plaintiff's] allegations as true and drawing all reasonable inferences from the

23 complaint in [the plaintiff's] favor." *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005).

24 However, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a

25 motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

26

27 [2] The parties have briefed other arguments, addressing among other things, whether the economic-loss
rule bars Plaintiff's fraud claim. However, with the recommendations given, the Court need not reach
28 these other arguments.

Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a claim must be facially plausible, *i.e.*, the complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard is not akin to a "probability requirement," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

III.     **ANALYSIS OF CLAIMS**

A.  **Song-Beverly Act claims**

The parties dispute whether Plaintiff has given sufficient facts to provide Defendant with fair notice of the defects in his vehicle under the Song-Beverly Act. "The Song-Beverly Act, which is popularly known as California's automobile lemon law, is a strongly pro-consumer law aimed at protecting consumers" and "regulates warranty terms and imposes service and repair obligations on those who issue warranties." *Barboza v. Mercedes-Benz USA, LLC*, No. 1:22-CV-0845 AWI CDB, 2022 WL 17978408, at *2 (E.D. Cal. Dec. 28, 2022). Part of the Act "requires manufacturers to replace a nonconforming vehicle or reimburse the buyer if the vehicle cannot be repaired after a reasonable number of attempts," with "[a] 'nonconformity' under the Act [being] a defect that substantially impairs the use, value, or safety of a vehicle to the buyer." *McGee v. Mercedes-Benz USA, LLC*, 612 F. Supp. 3d 1051, 1059 (S.D. Cal. 2020) (citing Cal. Civ. Code § 1793.22(e)(1)).

Accordingly, Plaintiff's Song-Beverly claims require him to sufficiently plead that his vehicle had a defect. *See Guzzetta v. Ford Motor Co.*, No. 2:21-CV-09151-MEMF-PVcx, 2022 WL 18674949, at *7 (C.D. Cal. Nov. 29, 2022) (noting that presence of defect is element of implied-warranty claim); *Harlan v. Roadtrek Motorhomes, Inc.*, No. 07-CV-0686 IEGBLM, 2009 WL 928309, at *9 (S.D. Cal. Apr. 2, 2009)  (noting that presence of defect is element of § 1793.2 claim); *Gonzalez v. Drew Indus. Inc.*, 750 F. Supp. 2d 1061, 1073 (C.D. Cal. 2007) (that presence of defect is element of express-warranty claim).

Despite the Ninth Circuit not squarely addressing what is required to adequately plead a defect, "district courts in the Ninth Circuit have often held that a complaint provides fair notice

of the defect if it (1) identifies the particular part or system affected by the defect, and (2) describes the problems allegedly caused by the defect." *Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1115 (C.D. Cal. 2021). This is the standard that Defendant advocates, and which Plaintiff does not contest. (ECF No. 12-1, p. 9; *see* ECF no. 16). Accordingly, the Court will apply it here.

Defendant argues that Plaintiff "never identifies what parts of the system are allegedly defective, what might be wrong with them, or how those facts might explain the reported symptoms he experienced." (ECF No. 12-1, p. 11).

The Court finds that Plaintiff has adequately pleaded facts for this claim.

Under the standard given, Plaintiff does not need to identify a particular part of a system; rather, Plaintiff needs to only identify "the particular part *or* system affected by the defect" and to describe the resulting problems. *Clark*, 528 F. Supp. 3d at 1115 (emphasis added). Here, Plaintiff not only identifies the FEB system as "causing [his] drivability concerns," but identifies the "Continental ARS410 radar sensor" as being the likely source of his braking problems. (ECF No. 10, pp. 5, 7). Moreover, he lists specific problems caused by the FEB system, including "defects causing the Subject Vehicle to stall when sitting a stop for less than a minute,"  "defects causing the Subject Vehicle to detect nonexistent obstacles, thereby automatically triggering the brakes and causing an abrupt slowdown or complete stop with no actual need to do so," "defects causing the Subject Vehicle's forward collision light to appear on the dashboard when nothing is in front of the vehicle," and "defects causing the FEB system to deactivate itself, thereby distracting the driver and rendering the FEB system disabled and useless." (*Id.* at 7). Such is sufficient to allege a defect. *See Fortune v. Nissan N. Am., Inc.*, No. 22-CV-05247-KAW, 2023 WL 2065043, at *3 (N.D. Cal. Feb. 16, 2023) (concluding that a plaintiff adequately alleged a defect in a 2019 Nissan Sentra by, in part, identifying "the particular part or system affected by the defect, namely the FEB system and its Continental ARS-410 radar sensor subcomponent" and describing problems resulting from the defect, including "the activation of the collision warning light").

Additionally, to the extent that Defendant argues[3] that Plaintiff has failed to explain how the FEB defect mechanically causes his problems, Plaintiff is not required to do so. *See Zuehlsdorf v. FCA US LLC*, No. EDCV 18-1877 JGB (KKx), 2019 WL 2098352, at *6 (C.D. Cal. Apr. 30, 2019) (concluding that a plaintiff did "not [need to] indicate how the alleged defect caused the reported symptoms" to provide fair notice of the defect); *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1237 n.60 (C.D. Cal. 2011) (noting that the plaintiff was "not required to plead the mechanical details of an alleged defect in order to state a claim"). Relatedly, at the pleading stage, the question is not whether Plaintiff has correctly identified the part or system causing his problems. Rather, the question is whether Plaintiff has plausibly alleged a defect to give Defendant fair notice to defend itself. The Court concludes that Plaintiff has done so.

Accordingly, the Court will recommend that Defendant's motion to dismiss be denied to the extent that it requests dismissal of Plaintiff's Song-Beverly Act claims.[4]

### B. Fraud claim

Defendant next contends that Plaintiff has failed to adequately plead fraud, arguing that Plaintiff does not allege facts showing that it knew of any defect in his vehicle before he bought

---

[3] For example, Defendant suggests that multiple components could be responsible for Plaintiff's problems: "The system would need internal sensors to detect and measure these inputs. It would also need computer hardware to process the data, software to control that hardware, and the electrical and mechanical linkages and actuators necessary to apply and control the brakes. A failure or defect in any of these might explain a failure of the system to activate, unnecessary braking, or other reported symptoms. . . . In short, the braking systems in Nissan vehicles are complex, as is the FEB system itself. Ortega fails to identify any defective part in that system, let alone explain how such a part might be defective." (ECF No. 12-1, p. 13).

[4] Defendant's motion to dismiss focuses on the adequacy of the FEB defect. (*See* ECF No. 12-1, pp. 11-14). However, the complaint also generally alleges defects stemming from the electrical system. (*See* ECF No. 10, p. 4, alleging issues from the vehicles electric system, such as problems starting the vehicle with the keys). To the extent the motion to dismiss challenges such allegations, the Court finds them sufficiently pled. The issues concerned, such as starting the vehicle key, are generally not complex and thus require less specificity than mechanically complex systems. *See DeCoteau v. FCA US LLC*, No. 2:15-CV-00020-MCE-EFB, 2015 WL 6951296, at *3 (E.D. Cal. Nov. 10, 2015) (noting that "the level of specificity required appears to directly correlate to the complexity of the machinery in question"). Moreover, the complaint connects all the problems experienced as also being related to the FEB system. (ECF No. 10, p. 7, linking "any other defects described in the repair history" for the vehicle to the FEB system); *see Clark*, 528 F. Supp. 3d at 1116 (noting that allegation of defect stemming from interrelated systems did not present "a pleading defect").

8

it.[5] (ECF No. 12-1, p. 16). Plaintiff points to TSBs concerning the FEB system, pre-production information, and consumer complaints to show Defendant's knowledge of the defect. (ECF No. 16, pp. 16-17).

As an initial matter, the Court begins with the applicable pleading standard, which the parties dispute. (ECF No. 16, pp. 12-13 (Plaintiff arguing that a relaxed standard applies); ECF No. 18, p. 13 (Defendant arguing that there is no relaxed standard)). Generally, fraud claims are subject to a heightened-pleading standard under Federal Rule of Civil Procedure 9(b), which provides as follows: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Because Defendant's knowledge of the FEB defect is the pertinent issue here, the particularity requirement of Rule 9(b) is not implicated. *See Clark*, 528 F. Supp. 3d at 1123 (noting that Rule 9(b)'s particularity requirement did not apply to the defendant's knowledge of a defect); *Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787, 800 (N.D. Cal. 2019) ("The pleading standard of Rule 8 applies to Apple's knowledge of a defect.").

Turning to the merits, the following is required to state a claim for fraudulent inducement by concealment or omission under California law:

> (1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty to disclose that fact to the plaintiff; (3) the defendant acted with the intent to defraud the plaintiff; (4) the plaintiff was unaware of the material fact and would have acted otherwise had she known of it; and (5) the plaintiff was damaged.

*Lozano v. Nissan N. Am., Inc.*, No. 5:22-CV-01887-RGK-SP, 2023 WL 2628691, at *2 (C.D. Cal. Feb. 21, 2023).

For the second element, a duty may arise where "a defendant possesses exclusive knowledge of a defect," of which it is aware at the time of sale. *Id.* Here, Defendant argues that Plaintiff's allegations of presale knowledge of the defect are too conclusory or irrelevant to establish knowledge. (ECF No. 12-1, p. 15). The Court agrees.

---

[5] Because the Court finds this issue dispositive, it will not address the parties' other arguments, such as whether the economic loss rule bars Plaintiff's fraud claim.

True, Plaintiff offers allegations about how Defendant "became aware of the FEB Defect," including through "pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints," etc. (ECF No. 10, p. 12). However, without factual support for the relevant testing, data, and complaints, such allegations are insufficient to show knowledge. *See Zurba v. FCA US LLC*, No. 5:21-CV-01824-JLS-SHK, 2022 WL 17363073, at *5 (C.D. Cal. Nov. 10, 2022) ("[T]he Court agrees with FCA that Plaintiff's general reference to 'data' and vague claim that FCA was 'inundated with complaints' regarding the Stalling Defect are insufficient to establish FCA's knowledge of a purported defect."); *Wong v. Am. Honda Motor Co.*, No. 2:19-CV-10537-JLS-KES, 2022 WL 3696616, at *10 (C.D. Cal. June 21, 2022) ("The mere fact that Honda typically conducts testing is insufficient to plausibly allege it had pre-sale knowledge of the Defect."); *Hardt v. Chrysler Grp. LLC*, No. SACV 14-01375-SJO (VBKx), 2015 WL 12683963, at *4 (C.D. Cal. Mar. 16, 2015) ("In cases where the plaintiffs fail to allege how 'pre-release testing data' or 'aggregate data' could have alerted the manufacturer to the alleged defect, courts have treated generalized allegations regarding the existence of such testing or information as insufficient to establish knowledge.").

Most specifically, Plaintiff cites TSBs relating to problems with the FEB system. (ECF No. 10, pp. 14-15). However, as Defendant points out, these TSBs relate to vehicles other than the Sentra that Plaintiff owns. (ECF No. 12-1, p. 16). At oral argument, Plaintiff's counsel acknowledged that the TSBs concern different vehicles, but represented that the FEB system was the same as the Sentra. (ECF No. 27, p. 38). When pressed on where the complaint specified that they systems were the same, counsel identified paragraph 49, which states as follows:

> Additionally, in early 2019, NISSAN NORTH AMERICA, INC. issued a Notice of Defect for 91,000 affected Rogue vehicles from the 2017 and 2018 model years "because their automatic emergency braking (AEB) system could unintentionally engage." Despite acknowledging this dangerous defect to Transport Canada, NHTSA's Canadian counterpart, NISSAN NORTH AMERICA, INC. has  made no such efforts to recall any of its AEB-equipped vehicles in the United States, even though there are no differences between the Rogues that NISSAN NORTH AMERICA, INC. sells to Canadian consumers

10

and those it sells to American consumers. Instead, it continued to equip Rogue and other Nissan-brand cars with the ARS410 radar.

(ECF No. 10, pp. 15-16; *see* ECF No. 27, pp. 38-39).

While this is closer to alleging presale knowledge, the Court does not find it close enough. First, this allegation relates to "a Notice of Defect," not the TSBs which are offered as the bulk of the support for Plaintiff's argument. Second, while Plaintiff generally indicates that the ARS410 radar is the same as "other Nissan-brand cars," he fails to specify that the FEB system itself is the same as his Sentra. This is a notable omission, as the FEB system of the Sentra may have different components than the other vehicles, which would tend not to put Defendant on notice of a problem with his specific vehicle. Accordingly, the Court concludes that Plaintiff's failure to link Defendant's alleged knowledge about problems with other vehicles to the FEB system in his vehicle is fatal to his fraud claim. *See Lozano*, 2023 WL 2628691, at *3 (concluding that allegations about "TSBs regarding FEB system problems in the Nissan Rogue" were "insufficient to show pre-sale knowledge" about defects in a Nissan Sentra absent allegations linking the systems in the vehicles); *Salcedo v. Nissan N. Am., Inc.*, No. CV 22-4152-GW-MARX, 2023 WL 332761, at *7 (C.D. Cal. Jan. 18, 2023) (finding no presale knowledge where, among other things, the "[p]laintiff failed to allege how a notice about a defect in another vehicle model connects to the alleged FEB defect in his Maxima").

For the above reasons, the Court will recommend that Defendant's motion to dismiss Plaintiff's fraud claim be granted.

### C.  Leave to Amend

Defendant argues that Plaintiff's fraud claim should be dismissed with prejudice. (See ECF No. 18, p. 10; ECF No. 27, p. 28). Noting that leave to amend should liberally be given, Plaintiff asks that, if his fraud claim is dismissed, he be granted leave to amend "to add additional facts." (ECF No. 16, p. 26). However, in his opposition to the motion to dismiss, Plaintiff provides no specifics as to what "additional facts" he could add to adequately plead a fraud claim.

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be "freely" given "when justice so requires." And the Ninth Circuit has stated that this policy

should be applied by courts "with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted). However, "[w]here the plaintiff has previously filed an amended complaint, as [is the case] here, the district court's discretion to deny leave to amend is particularly broad." *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004) (citation and internal quotation marks omitted).

The Court considers the following nonexclusive factors in deciding whether to grant leave to amend: undue delay, bad faith or dilatory motive by the plaintiff, repeated failure to cure deficiencies by amendments previously allow, undue prejudice to the opposing party if amendment were granted, and futility of amendment. *Eminence Cap., LLC*, 316 F.3d 1048, 1052 (9th Cir. 2003) (noting that "[a] district court's failure to consider the relevant factors and articulate why dismissal should be with prejudice instead of without prejudice may constitute an abuse of discretion"). Of these factors, prejudice carries the most weight. *Id.*

Before addressing the relevant factors, the Court provides some background. As discussed extensively at the hearing, the Court noted a potential problem with Plaintiff's fraud claim was the lack of facts provided in the first amended complaint to show that Defendant had presale knowledge of the alleged FEB defect. (*See* ECF No. 27, p. 26 – "So far I haven't seen anything that shows . . . that they knew the Nissan Sentra had this defect."). When pressed about what further information Plaintiff might possess that was not included in the first amended complaint, counsel responded that he had TSBs specifically showing Defendant's presale knowledge as to the Nissan Sentra. (*Id.* at 27). When defense counsel was asked for his position on amendment, he had "absolutely no objection" to it but requested that Plaintiff either file a second amended complaint or stand by the decision issued on the motion to dismiss the first amended complaint. (*Id.* at 28). The Court gave Plaintiff the opportunity to file an amended complaint, noting that additional facts could make "a material difference" for "the fraud claim." (*Id.* at 30). And the Court did not require Plaintiff to decide immediately, but gave him several days to file a notice of his decision on whether to amend. (ECF No. 23). Moreover, the Court advised Plaintiff that, if he proceeded on his first amended complaint, there was the risk that he would not be granted leave to amend. (ECF No. 27, p. 29).

12

1    Ultimately, Plaintiff decided not to amend his complaint. (ECF No. 25).

2        With these circumstances in mind, the Court turns to the relevant factors. First, the

3    Court finds that allowing Plaintiff to amend now would constitute undue delay. Notably,

4    Plaintiff possessed information purportedly material to the viability of his fraud claim before

5    these findings and recommendations but chose to submit on the allegations in his first amended

6    complaint. Such prior knowledge weighs against permitting amendment after an adverse

7    decision. *See Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999)

8    ("Nothing in the proposed amended complaint relied on facts that were unavailable before the

9    stipulated deadline. The amendment was one that Lockheed had been considering three months

10   before the stipulated deadline."); *Fid. Fin. Corp. v. Fed. Home Loan Bank of San Francisco*,

11   792 F.2d 1432, 1438 (9th Cir. 1986) (upholding denial of leave to amend where "[t]he factual

12   bases of the claims were known to [a plaintiff] long before"). Moreover, litigating a motion to

13   dismiss, especially given the impacted caseload of this Court's District Judges, is time

14   consuming for both the parties and the Court.

15       Similarly, the Court finds that the prior-opportunity-to-amend and bad-faith factors

16   weigh against granting leave to amend. Importantly, despite there being no opposition to

17   amendment by Defendant, Plaintiff chose to stand on his complaint knowing that he had

18   additional facts that might support his fraud claim. Moreover, Plaintiff has previously amended

19   his complaint once already. *See Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 345 (9th Cir. 1996)

20   (affirming denial of leave to amend where a plaintiff "previously had an opportunity to timely

21   amend its complaint and it failed to do so"). Relatedly, Plaintiff's desire to amend his

22   complaint—only after facing an adverse ruling—evidences an improper wait-and-see approach

23   to litigation. *See Jang v. Bos. Sci. Scimed, Inc.*, 729 F.3d 357, 368 (3d Cir. 2013) ("declin[ing]

24   to reward a wait-and-see approach to pleading" where the plaintiff waited to amend until after a

25   ruling); *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 280 (3d Cir. 2004) ("Plaintiffs relied

26   at their peril on the possibility of adding to their complaint, but in doing so they clearly risked

27   the prospect of the entry of a final dismissal order.").

28       The Court also finds that Defendant would be unduly prejudiced if Plaintiff were

13

granted leave to amend. As discussed above, the instant motion to dismiss is Defendant's second, with Plaintiff choosing to file a first amended complaint in response to Defendant's initial motion to dismiss. (ECF No. 6). And despite Defendant having no opposition to Plaintiff filing another amended complaint to present all material allegations in support of the fraud claim, Plaintiff chose to proceed on his first amended complaint. Granting Plaintiff leave to file a third complaint to offer previously known facts, simply because the Court has now sided with Defendant on the fraud claim, would only serve to prejudice Defendant with further delays as well as additional litigation costs. *See BNSF Ry. Co. v. San Joaquin Valley R. Co.*, No. 1:08-CV-01086-AWI, 2011 WL 3328398, at *2 (E.D. Cal. Aug. 2, 2011) ("Prejudice results when an amendment would unnecessarily increase costs . . . .").

Lastly, as to futility of amendment, the Court cannot fully address this factor. True, Plaintiff has represented that he could allege additional material facts. However, without specificity as to what those facts are, the Court cannot conduct a substantive analysis.

After considering all the relevant factors, the Court finds that they weigh in favor of recommending that leave to amend be denied.

## IV.     CONCLUSION AND RECOMMENDATIONS

For the reasons given, IT IS RECOMMENDED as follows:

1.  Defendant's motion to dismiss (ECF No. 12) be granted to the extent that it requests dismissal of Plaintiff's fraud claim.

2.  Plaintiff's fraud claim be dismissed with prejudice.

3.  Defendant's motion to dismiss (ECF No. 12) be denied to the extent that it requests dismissal of Plaintiff's remaining claims—the Song-Beverly Act claims.

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within fourteen (14) days after being served with a copy of these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14)

days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __May 18, 2023__                    /s/ *Erica P. Grosjean*
                                             UNITED STATES MAGISTRATE JUDGE